UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

MIKETAVIOUS BROOKS    CIVIL ACTION NO. 3:10-cv-1886
  LA. DOC #447090
VS.           SECTION P

            JUDGE ROBERT G. JAMES

SHERIFF ANDY BROWN, ET AL.  MAGISTRATE JUDGE KAREN L. HAYES

SUPPLEMENTAL REPORT AND RECOMMENDATION

*Pro se* plaintiff Miketavious Brooks, proceeding *in forma pauperis*, filed the instant civil

rights complaint pursuant to 42 U.S.C. §1083 on December 10, 2010. Plaintiff is an inmate in the

custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at

the Claiborne Parish Detention Center, Homer, Louisiana, but he complains that the defendants

failed to protect him from violence at the hands of another inmate while he was incarcerated at the

Jackson Parish Correctional Center (JPCC) on October 2, 2010.  This matter has been referred to the

undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C.

§636 and the standing orders of the Court.  For the following reasons it is recommended that the

complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for

which relief may be granted.

### Background

On some unspecified date, plaintiff drafted a *pro se* Petition for Damages to be filed in

Louisiana's  Second Judicial District Court. [Doc. #1, pp. 5-8] It is unclear whether plaintiff filed

this pleading and if so, whether it remains pending.  Plaintiff omitted any mention of the state suit

in his amended complaint [Doc. #7] and therefore it must be presumed that the suit was either not

filed or was withdrawn since plaintiff was specifically directed to address the issue in the Amend Order of February 17, 2011. [Doc. #7]

In any event, in that pleading he alleged that on October 2, 2010, he was incarcerated at the JPCC. On that date, while he was asleep, he was attacked by inmate Anthony Sessions who was armed with "a jail-house knife."  Plaintiff claimed that he was stabbed 12 times; however, he described 13 specific wounds claiming that he was stabbed once in his temple, once in the back of his head, once in his lower neck, nine times in his back and once in his leg.  According to plaintiff, the attack was not witnessed by any Corrections Officers. When some of plaintiff's fellow inmates (subsequently identified as Marlon Brantley and Dominique Richards) attempted to come to his aid, they too were attacked by inmates armed with "locks."  Despite the fact that plaintiff's bed was in plain view of the control pod, the attack was unobserved and he was unable to obtain assistance from corrections officials until a fellow inmate made them aware of the situation. Plaintiff was eventually moved to another dormitory; however, since there was no medical staff on duty, he was required to treat his wounds himself. On the following day, October 3, 2010, plaintiff telephoned his mother and told her about the incident. On that same day plaintiff was transported to E.A. Conway Hospital in Monroe where he received treatment for his injuries.

Plaintiff claimed that his assailant was not disciplined because the investigation was improper. He claimed that his Constitutional Rights were violated because the Corrections Officers failed to see the incident and there was a one day delay in obtaining medical treatment for his injuries. [Doc. #1]

Plaintiff's complaint was unsigned and he was directed to amend; on January 26, 2011, he filed a conforming complaint which alleged facts identical to those alleged in the State petition

which was attached to his original complaint. [Doc. #4] He prayed for "financial compensation due to the gross and blatant negligence of Jackson Parish Correctional Center as well as relief from incarceration due to irreparable damages ..." [Doc. #4]

In his original and first amended complaint, plaintiff sued Jackson Parish Sheriff Andy Brown, and JPCC Warden Dave Yelverton; however, as shown above, he sought compensation from the JPCC. [Docs. #1 and #4]

On February 17, 2011, plaintiff was ordered to amend his complaint to provide additional information with regard to his claims for relief.  Among other things plaintiff was ordered to provide the name of each person who violated his rights; a description of what each person did to violate his rights; the place and date that each event occurred; and a description of the injury. The order noted that plaintiff named only two persons as defendants – Sheriff Brown and Warden Yelverton – however, plaintiff alleged no fault on the part of these defendants. It was also noted that any claims against JPCC were subject to dismissal because JPCC is not a "juridical person" capable of being sued.  Finally, plaintiff was instructed that in order to state a claim for relief under the circumstances he described, he needed to amend his complaint to allege facts establishing deliberate indifference on the part of the defendants.  [Doc. #7]

Petitioner did not respond to the amend order and on April 26, 2011, the undersigned recommended dismissal of the complaint pursuant to FRCP Rule 41(b). [Doc. #8] On May 13, 2011, plaintiff objected to the recommendation and alleged that he had in fact complied with the amend order but his amended complaint was apparently lost by either the prison authorities at his present place of confinement or by the United States Postal Service. [Doc. #9]

Plaintiff provided a copy of the amended complaint dated March 18, 2011. Therein he

indicated a desire to withdraw his original complaint, to dismiss his claims against JPCC and to name as his "primary" defendant the Jackson Parish Sheriff's Department. In this amended complaint plaintiff alleged that on October 2, 2010, a fellow inmate named "Anthony Secessions" stabbed him 13 times while plaintiff was sleeping in his assigned bunk which was located 10-15 feet from the prison's Security Control Room.  According to the amended complaint the assault "was in plain sight for the Security Officers to see" but apparently they did not.  Once security officers were informed, plaintiff was removed from the dorm to the kitchen where he was debriefed and provided peroxide to clean his wounds.  Plaintiff was then placed in "O" dorm which lacked video monitoring and which housed many acquaintances of the assailant. According to plaintiff, he remained in fear because "... many offenders were known to have not only homemade knives (shanks), but they also had cell phones as well, and could communicate from cell to cell..." and therefore plaintiff's transfer to "O" dorm perhaps resulted in exposing him to even greater danger. (Plaintiff did not allege that he was the victim of any further assaults while he was incarcerated at JPCC.)

On the following day, after having been contacted by plaintiff's mother, plaintiff was taken to E. A. Conway Hospital where his wounds were treated.  (Although plaintiff was directed to provide a more detailed description of his injury [Doc. #7], he failed to do so.)

According to plaintiff, the investigation into this incident that was launched by corrections officials was "lackluster" and did not include a "shake down" to search for the weapon used in the attack.  Plaintiff alleged "... there were many similar stabbing attacks prior to the brutal attempt on Plaintiff's life" and, two days before plaintiff was attacked another inmate in Dorm C was stabbed 16-17 times; a week later, an inmate was stabbed 30 times. Plaintiff further alleged, that JPCC "... has had a long history of being an institution that allowed these shanks and stabbing to continually

take place having little or no security, or protection to keep a sleeping defenseless inmate safe from what should be a weapon free facility."

As previously noted, plaintiff dismissed his claims against JPCC and identified the "...Jackson Parish Sheriff's Department as primary defendant and the entity whose failure to establish a security condition; a trained personnel staff; up-to-date functional safety technical devices; practical search methods; and constant visual surveillance; that put him at a substantial risk and subsequently, causing him serious harm."

He contends now that the Sheriff's Department "... failed to provide or install provable inmate security procedures and train and monitor a trained security staff to assure they were in compliance with those procedures." According to plaintiff, the Sheriff's Department "... has a long history of seeing similar stabbings and or attacks, before and after plaintiff's attack, without making the necessary security adjustments to prevent his or other inmates from further attacks." He also faulted the Department for failing to have medical personnel on duty at night and failing to train personnel to call for emergency help in the absence of trained medical staff.

Plaintiff also complained that the security staff, who saw his open wounds, provided only peroxide for treatment on the night in question.  Finally, plaintiff complained that his transfer, as well as the transfer of his witnesses, was an act of retaliation and an attempt to "cover-up" the "lack of professionalism and security."

### *Law and Analysis*

### *1. Screening*

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint

as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915 and 1915A, and 42 U.S.C. § 1997e(c).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff filed an articulate original complaint setting out the basic parameters of his claim; he was thereafter allowed to amend his complaint and was directed to provide additional factual support for his claims.  He provided some, but not all of the facts requested; nevertheless, further amendment of the pleadings would serve no useful purpose as it appears that plaintiff has alleged his best case. Accepting all of plaintiff's allegations as true, and, giving plaintiff the benefit of every doubt, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed for failing to state a claim for which relief may be granted.

## 2. Jackson Parish Sheriff's Department

As noted above, plaintiff's initial round of pleadings named Sheriff Brown, Warden

6

Yelverton and the JPCC as defendants.  He was ordered to amend his complaint because his original pleadings alleged no fault on the part of Brown and Yelverton and his claims against JPCC were subject to dismissal because JPCC is not a juridical person under Louisiana law and therefore JPCC is not a proper party.[1] [Doc. #7]

Plaintiff amended his complaint and dismissed JPCC as a defendant; he named as his "primary" defendant the Jackson Parish Sheriff's Department; however, that too, is improper,

---

[1] The amend order noted, "Plaintiff has sued only two individuals,  the Sheriff and the Warden.  It appears that he has named these defendants in their supervisory capacities.  However, '[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries.' *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). 'Vicarious liability does not apply to § 1983 claims.' *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). 'Personal involvement is an essential element of a civil rights cause of action.' *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983).

Further, he appears to have named JPCC as a defendant; however, JPCC is not an entity capable of being sued. Fed. R. Civ. P. 17(b) provides that the 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'  Thus, Louisiana law governs whether an entity such as a  corrections facility has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a 'juridical person.' This term is defined by the Louisiana Civil Code as '... an entity to which the law attributes personality, such as a corporation or partnership.' La. Civ.Code Ann. art. 24.

JPCC is apparently a parish corrections facility operated by the sheriff of Jackson Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also,  *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)].

He should amend his complaint to provide the facts demanded by Rule 8 and, if necessary, dismiss his claims against JPCC  and its supervisory personnel to the extent that the claims are based on the theory of *respondeat superior*." [Doc. #7]

because a Louisiana parish sheriff's office is not a legal entity capable of being sued. *Cozzo v. Tangipahoa Parish Council—President Government*, 279 F.3d 273, 283 (5th Cir.2002).

### 3. Deliberate Indifference – Failure to Protect

Giving plaintiff the benefit of the doubt, it must be assumed that he intends to pursue his claims against the original defendants, Sheriff Brown and Warden Yelverton. However, as noted in the amend order, plaintiff alleged no personal fault on the part of these defendants and defendants such as the sheriff and warden may be held liable only if they affirmatively participated in the acts that caused plaintiff's alleged constitutional deprivations. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). Further, to the extent that he seeks to hold these defendants liable for the faults of their employees, he fails to state a claim for which relief may be given, since, as shown above, "[v]icarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995).

Nevertheless, supervisory defendants may be liable under Section 1983 if they implemented unconstitutional policies that causally resulted in plaintiff's injuries. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). Supervisory officials such as the Sheriff and Warden who were not personally involved in the acts or omissions that deprived the plaintiff of his constitutional rights may still be liable under section 1983 if they failed to train or supervise the officers involved, there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights, and the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir.2001). With regard to this

8

standard, a single instance of the lack of training or supervision is usually insufficient to establish deliberate indifference. *Thompson*, 245 F.3d at 459. "Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.*

Deliberate indifference requires more than ordinary lack of due care for the prisoner's interests or safety but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference in this context means that the defendant knew of but disregarded an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and, in addition, he must also have drawn the inference. *Id.* at 837. In other words, actual knowledge and appreciation of the risk are required. *Id.* at 837-38. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not does not create liability. *Id.* at 838; see also *id.* at 842 ("[i]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.").

Additionally, in considering whether an Eighth Amendment violation has occurred, Courts must look to whether there was a "substantial" or "pervasive" risk of harm. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. See e.g. *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot). Plaintiff has indicated that "... there were many similar stabbing attacks prior to the brutal attempt on Plaintiff's life..." However, in support of this conclusory allegation he sited only 1 incident that occurred 2 days prior to the incident in question, and a second incident that occurred the following week. He offers nothing to suggest that the assault perpetrated on him was in any way linked to these other attacks – i.e., that they were "gang" related

and thus foreseeable.  Inmates are unlikely to recover under Section 1983  for injuries sustained in an isolated assaults unless they can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated and clearly well-founded claims of danger.  There are no allegations that the defendants set plaintiff up for the attack or ignored his claims of danger prior to the  attack.

The facts alleged do not demonstrate that either of the defendants inferred that plaintiff was at risk or that the attack was a foreseeable consequence.

In short, plaintiff has not shown that any of the defendants were deliberately indifferent to a substantial risk of serious harm and therefore, plaintiff's complaint should be dismissed for failing to state a claim for which relief might be granted.

## 4. Delayed Medical Care

Plaintiff claimed that the prison's policy of not having around-the-clock staffing of the prison medical department resulted in an unspecified delay in receiving medical care and treatment.

Plaintiff's medical care claim, like his failure to protect claim, arises under the Eighth Amendment. To prevail on such a claim an inmate  must show that care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir.1985). Whether the plaintiff received the treatment that he felt he should have is not the issue. *Estelle v. Gamble*, *supra; Woodall v. Foti*, 648 F.2d 268 (5th Cir.1981).   Further, negligence, neglect, medical malpractice or unsuccessful medical treatment do not give rise to a §1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir.1991);  *Johnson v. Treen, supra*.   Instead, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811

10

(1994). As stated in *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir.1993).

Plaintiff was specifically directed to "... state with specificity **THE NATURE AND EXTENT OF THE INJURIES ... HE CLAIMS TO HAVE SUSTAINED AS A RESULT OF THE ALLEGED CONSTITUTIONAL VIOLATIONS**." [Doc. #7] However, his amended complaint failed to address this issue. Plaintiff described 13 wounds to various parts of his body, but the did not indicate that the injuries were life-threatening, nor did he allege that the delay in providing medical treatment exacerbated his injuries in any way. In other words, there is no suggestion whatever that the relatively brief interval of time between the assault and plaintiff's obtaining treatment resulted in any substantial harm or aggravation of his condition. See *Mendoza v. Lynaugh, supra.*   The relatively brief delay he experienced is not indicative of deliberate indifference. *Compare, O'Bryant v. Culpepper*, 214 F.3d 1350 (5th Cir.2000)("Although [plaintiff] was injured on a Saturday and did not receive treatment until the following Tuesday, he cannot show that the delay in treating his injury caused substantial harm"); *Chesnut v. Horton*, 2009 WL 1269992 (N.D.Tex., May 7, 2009) (12-hour delay after confrontation with a co-inmate not deliberate indifference).

Further, plaintiff must be aware that even persons who are not confined in penal institutions must suffer waits of several hours in hospital emergency rooms or sometimes waits of several days before obtaining appointments with their chosen physicians.

11

### 5. Retaliation

Plaintiff did not allege any retaliation claims in his original complaints. However, in his amended complaint, he implied that his transfer to his present place of confinement and the transfer of his two witnesses were all acts of retaliation, or, as he put it, "... showed signs of retaliatory punishment."  To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means  that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995).  The plaintiff must allege more than just his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999). Here, plaintiff has alleged, in conclusory fashion, that his transfer and the transfers of his witnesses were acts of retaliation. However, plaintiff does not identify the constitutional right he exercised which in turn caused the transfers. Indeed, plaintiff cannot claim that his transfer occurred as a result of having filed suit since plaintiff had already been transferred to his present place of confinement when this complaint was filed.  Further, plaintiff has not provided sufficient facts to establish a chronology of events from which retaliation may be plausibly inferred.  Further, plaintiff failed  to establish causation as required by the jurisprudence. As noted above, plaintiff must allege facts to demonstrate that "but for" the exercise of some as yet unidentified constitutional right, the alleged  retaliatory adverse act –his transfer– would not have occurred.  Indeed, the more plausible explanation for the transfers of plaintiff and his allies was to

12

prevent further physical violence at the prison.

Finally, even if the scenario suggested establishes retaliation, plaintiff has not shown that the alleged retaliatory act  had a chilling effect on him, since, as shown above, he filed his complaint after he was transferred. *Compare Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006)(A retaliatory adverse act must be more than *de minimis* to state a viable retaliation claim; the act must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights.")

### Conclusion and Recommendation

Plaintiff's complaints do not establish Constitutional violation . Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5ᵗʰ Cir. 1996).**

**In Chambers, Monroe, Louisiana,** June 7, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

14